**KEMMONS WILSON, INC., Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

No. 88–3490.

United States Court of Appeals, Sixth Circuit.

Argued March 21, 1989.

Decided Aug. 11, 1989.

Thomas J. Walsh, Jr. (argued), Jackson W. Moore, Barbara L. Morris, Glen G. Reid, Jr., McDonnell, Boyd, Smith & Solmson, Memphis, Tenn., for petitioner.

J.E. Murdock, III, F.A.A., Office of Gen. Counsel, Richard W. Danforth, Daphne A. Fuller (argued), F.A.A., Office of Chief Counsel, Washington, D.C., for respondent.

Before MERRITT and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.

MERRITT, Circuit Judge.

Petitioner Kemmons Wilson, Inc. (Wilson), wants to open a "fixed base operation"—called an "FBO" in aviation parlance—at the Memphis International Airport. FBO's are small plane gas and repair stations which service private, nonscheduled aircraft at airports throughout the country. This proposed FBO will compete with Memphis Aero Corporation, which is now the only FBO at the airport. Wilson seeks review of the action of respondent, FAA, which dismissed, after an informal investigation conducted without a formal hearing, Wilson's complaint that the conduct of the Memphis Airport Authority in creating Memphis Aero's local monopoly at the airport violates the so-called "exclusive rights" provision of federal aviation law. The exclusive rights provision, 49 U.S.C. App. § 1349(a) (1989), states in pertinent part:

> There shall be no exclusive right for the use of any landing area of air navigation facility upon which Federal funds have been expended. For purposes of the preceding sentence, the providing of services at an airport by a single fixed-based operator shall not be construed as an exclusive right if it would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and if allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport.

The petition is before us for review under the judicial review provision of the Federal Aviation Act, 49 U.S.C.App. § 1486

(1989),[1] and under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–06 (1982), which entitles a person "aggrieved by agency action" to judicial review.

Wilson asserts that the FAA failed to conduct a proper administrative proceeding under § 706 of the APA and that the FAA's conclusions are "unsupported by substantial evidence" in the record, and are "arbitrary, capricious [and] an abuse of discretion." Wilson also asserts that the administrative findings and conclusions violate the judicial review provision, § 1486(e), requiring that such findings be "supported by substantial evidence" and the investigative provision § 1482(a), requiring a "hearing" unless the "complaint does not state facts which warrant ... action." [2]

The FAA contends that its findings and conclusions are unreviewable because under APA § 701(a) its decision constitutes "agency action committed to agency discretion," as that term is interpreted by the Supreme Court in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Alternatively, the FAA argues that its findings are in any event supported by substantial evidence, non-arbitrary and not an abuse of discretion. The FAA also contends that Wilson is not entitled to a formal, evidentiary hearing under the investigative provision, 49 U.S.C.App. § 1482(a) or

under the FAA's own rules and regulations.

Therefore, the issues presented for review are whether the FAA decision is (1) unreviewable under APA § 701(a), (2) supported by substantial evidence in the record, and (3) subject to the requirement of an evidentiary hearing. We conclude that the FAA decision is reviewable, is not supported by substantial evidence in the record and should be set aside and remanded for further proceedings including an evidentiary hearing.

I.

For many years the Memphis Airport Authority has apparently had only one FBO, Memphis Aero Corporation, at the Memphis International Airport. On July 25, 1986, Wilson made formal application to establish a competing FBO on vacant land at the Airport. A month later the Memphis Airport Authority rejected the application at a board meeting. The record certified by the FAA does not contain the minutes of this meeting, minutes which apparently state the reasons for the Commission's action.

A year later, on June 17, 1987, after further negotiations between Wilson and the Airport Authority broke down, Wilson filed a formal letter of complaint with the

---

1. 49 U.S.C.App. § 1486 provides in pertinent part:

   **§ 1486. Judicial Review**
   **(a) Orders subject to review; petition for review**
   Any order, affirmative or negative, issued by the Board ... under this chapter ... shall be subject to review by the courts of appeals of the United States ... upon petition, filed within sixty days after the entry of such order, by any person disclosing a substantial interest in such order....
   **(d) Power of court**
   Upon transmittal of the petition to the Board, ... the court shall have exclusive jurisdiction to affirm, modify, or set aside the order complained of, in whole or in part, and if need be, to order further proceedings by the Board....
   **(e) Conclusiveness of findings of fact; objections**
   The findings of fact by the Board, ... if supported by substantial evidence, shall be conclusive. No objection to an order of the Board or Administrator shall be considered

by the court unless such objection shall have been urged before the Board ... or, if it was not so urged, unless there were reasonable grounds for failure to do so.

2. 49 U.S.C.App. § 1482(a)(Supp.1989) provides in pertinent part:
   **§ 1482. Complaints to and investigations by the Administrator and the Board**
   **(a) Filing of complaints; ...**
   Any person may file with the ... Board ... a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provisions of this chapter, or of any requirement established pursuant thereto. If the person complained against shall not satisfy the complaint and there shall appear to be any reasonable ground for investigating the complaint, it shall be the duty of the ... Board to investigate the matters complained of. Whenever ... the Board is of the opinion that any complaint does not state facts which warrant an investigation or action, such complaint may be dismissed without hearing.

Memphis office of the FAA, alleging that the Airport Authority had denied petitioner's application in violation of the "exclusive rights" provision. The local FAA office began an investigation based on the complaint. In response to the FAA inquiry, the Airport Commission, in a letter dated July 30, 1987, gave one basic reason for its action:

The Memphis–Shelby County Airport Authority has been unable to lease space to Robert A. Wilson *because there is not space available* on the Memphis International Airport to develop a second FBO. All property that has airfield access is already leased, developed, restricted due to runway and navigational aid clear zones, or reserved for future passenger terminal buildings, taxiways or runways.

Joint Appendix at 32 (emphasis added).

Although the record is unclear, the FAA's Memphis office apparently must have accepted this reason as valid for on August 20, 1987, Mr. John M. Dempsey, the Manager of the FAA's district office in Memphis, wrote Wilson a short conclusory letter rejecting the June 17th complaint:

The Airport Authority responded on July 30, 1987, advising the Airport is experiencing extraordinary growth which will require the construction of additional taxiways, runway, and new midfield terminal complex within the next five years. Their response stated that there is no land on the Airport which is not already leased, currently used to protect approach surfaces, or dedicated for other aeronautical purposes.

We met with Mr. Larry Cox, President of the Memphis–Shelby County Airport Authority, on August 19, 1987, and specifically reviewed the Airport Layout Plan for Memphis International. From this review, the FAA is satisfied that there is no land currently available which can be effectively developed into another fixed base operation.

Joint Appendix at 31.

The FAA record certified to us is cryptic. It does not contain an Airport plan or any other evidence which would make it possible for us to assess the accuracy of the "no-vacant-land" statements by the Airport Authority approved by the FAA. The record does have a map of the Airport, labeled "R. 46," which appears to show between 300 and 400 acres of vacant land in an inverted "L" shape area east of Runway 36 Right and south of Runway 27.

Upon receiving Mr. Dempsey's letter of August 20, Wilson requested reconsideration of this determination by the local FAA office. Wilson argued that the "no-vacant-land" rationale advanced by the Airport Authority and accepted by Mr. Dempsey was untrue and was a pretext for denying petitioner's application for a competing FBO. On November 25, 1987, Mr. Dempsey declined to change his view. He stated in a letter:

Based on the investigation conducted in June and July of this year and the follow-up review mentioned above, this office reaffirms the previous finding expressed to you in our August 20, 1987, correspondence, that the Memphis–Shelby County Airport Authority has not created an exclusive right by not entering into a lease with Mr. Robert A. Wilson. You should view this letter as the conclusion of our investigation into this complaint.

Joint Appendix at 19.

Petitioner then made a timely request for a formal evidentiary hearing on its complaint. Its request was addressed to the Federal Aviation Administration in Washington. Along with its request it submitted a brief outlining its argument that vacant land at the Memphis Airport is available and that the action of the Memphis Airport Authority was a pretext to protect the monopoly position of Memphis Aero. On April 4, 1988, Mr. Leonard E. Mudd, Director, Office of Airport Standards, denied the requested evidentiary hearing in a brief, conclusory letter which stated that "we concur with the findings" of Mr. Dempsey that the Airport Authority "has supportable reasons for currently denying space on the Airport for an additional FBO." Mr. Mudd stated without further elaboration: "This decision is based on the recently updated master and layout plans

for the airport showing that land currently available for development will be used for other uses." Joint Appendix at 1–2.

Wilson then filed a timely petition for review with this Court arguing that the findings of the FAA on which it based its refusal to grant an evidentiary hearing are not supported by substantial evidence and that the action of the FAA in refusing an evidentiary hearing was arbitrary. Petitioner seeks a decision from this Court ordering the FAA to conduct an evidentiary hearing on the so-called "exclusive rights" or monopoly issue.

## II.

We note at the outset that the FAA does not argue that this case is not properly before us because of procedural defects in the manner or office in which Wilson filed his complaint. Any such issues are, therefore, waived.

■ At the outset, we also conclude that the letter of April 4, 1988, from the FAA Office of Airport Standards finding no exclusive rights violation and denying the requested hearing is an "order, affirmative or negative" subject to judicial review. 49 U.S.C.App. § 1486, note 1, *supra*. In a brief footnote, the FAA asserts that it "does not concede that the letter … is an order, final or otherwise, vesting jurisdiction in this Court under 49 U.S.C. [§] 1486 … because it does not impose an obligation, deny a right or fix some legal relationship." Respondent's Brief at 7–8, n. 6. The FAA does not further explain this point. We view the letter differently, however. It is a determination that no exclusive rights violation exists. It "concurs with the findings" of Mr. Dempsey and approves the denial to Wilson of the right to operate an FBO at the Memphis Airport. The letter is in substance no different for purposes of judicial review than the announcement of the Secretary of Transportation's approval of the determination of local officials permitting the construction of a highway through a Memphis park found reviewable in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). It is analogous to an order refusing to grant affirmative relief made appealable under 28 U.S.C. § 1292(a)(1).

## III.

■ Turning our attention to the merits of this case we conclude that the FAA's reliance on *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), for the proposition that the FAA's decision is unreviewable is misplaced. In *Chaney* the Supreme Court concluded that the Food and Drug Administration's refusal to bring an administrative action prohibiting the use of certain lethal drugs in carrying out public executions, was an unreviewable administrative "action committed to agency discretion" under § 701(a) of the APA. The Court held that § 701(a) creates a "general presumption of unreviewability of decisions not to enforce," a "presumption" which may be rebutted by showing that Congress "has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion…." 470 U.S. at 834, 105 S.Ct. at 1657.

The FAA's action here does not fit within the rationale of *Chaney*. The FAA's action is not properly characterized as a "decision not to enforce." Rather Wilson brought a complaint within the mandatory administrative jurisdiction of the FAA against the Memphis Airport Authority alleging a colorable violation of the "exclusive rights" provision of 49 U.S.C.App. § 1349(a). The FAA gave notice of the complaint to the Memphis Airport *and adjudicated the claim*. It conducted an informal investigation. Without a formal hearing, it concluded that the conduct of the Airport Authority was justified because there is no vacant land at the airport suitable for a second FBO.

The investigative provision, § 1482(a), creates a duty to investigate if there are "any reasonable grounds" for the complaint. The FAA's duty to investigate raises a corresponding duty under the statute after investigation to adjudicate seriously "exclusive rights" claims which are not

frivolous. The FAA did not find the claim frivolous. It did not refuse to investigate or "refuse to enforce" in the sense that it exercised its "prosecutorial discretion" in favor of declining prosecution.[3] Rather it adjudicated the claim, although, based on the present record before us, it did so in a perfunctory and conclusory fashion. Its adjudication simply approved the action of local airport officials.

In *Chaney*, in a detailed discussion, the Supreme Court attempted to make a clear distinction between "an affirmative act of approval" of local official action by a federal administrative agency, which is subject to judicial review and a "refusal to enforce," which is not subject to review under § 701(a). 470 U.S. at 831–33, 105 S.Ct. at 1655–57. The approval of the conduct of the local airport officials here is precisely the kind of decision referred to in *Chaney* as an example of an "affirmative act of approval." It is the same as the approval of the conduct of local officials by the Department of Transportation found reviewable in *Citizens to Preserve Overton Park*, 401 U.S. 402, 91 S.Ct. 814 and cited as a reviewable "affirmative act of approval" in *Chaney*. We conclude, therefore, that here we have the same kind of "affirmative act of approval" of the conduct of local officials by a federal agency which the Supreme Court in *Chaney* distinguished from an unreviewable "act committed to agency discretion." 470 U.S. at 829–31, 105 S.Ct. at 1654–56.

A perfunctory adjudication of a case which the agency has not taken sufficiently seriously is not the same as the exercise of prosecutorial discretion. To confuse an inadequate adjudication with a decision not to prosecute would defeat the plainly stated intent of Congress both to prohibit unjustified fixed-base operator monopolies at federally financed airports and to provide an administrative remedy for such violations subject to full judicial review.

The FAA's view of administrative discretion runs contrary to the standards and procedures established in the exclusive rights and investigative provisions in 49 U.S.C.App. §§ 1349(a) and 1482. The plain language of § 1349(a) makes clear Congressional intent to require airports to justify fully on the basis of specific economic conditions the granting of an exclusive right to a single FBO. The Attorney General in a formal opinion has stated that "the legislative history ... shows that the purpose of the provision is to prohibit monopolies or combinations in restraint of trade or commerce and to promote and encourage competition in civil aeronautics...." 40 Op.Att'y Gen. 71, 72 (1941); *see also* Note, *Federal Aviation Act— Grant of Exclusive Right To Operate At Federally Funded Airport*, 52 J.Air L. & Com. 1045 (1987). Similarly, the language of the judicial review provision of § 1486 is straightforward and makes clear that Congress intended that FAA adjudications approving the actions of local officials in granting such a monopoly should be subject to judicial review. We conclude, therefore, that the action of the FAA in this case is subject to judicial review and is not an act "committed to agency discretion" under APA § 701(a).

### IV.

We must next decide whether the FAA's finding that there is no vacant land at the Memphis Airport for a competing FBO is supported by substantial evidence in the record. The record before us contains only the letters and other cryptic evidence described in Section I of this opinion. The FAA made no effort to obtain evidence, make findings or analyze the competitive and other factors listed in the exclusive rights provision § 1349(a). Neither does the record disclose the reason the FAA believed that no vacant land exists at the airport to accommodate a competing FBO. There are no specific findings made on this issue, only a perfunctory, conclusory statement approving the Airport Author-

---

**3.** Under § 1482(a), the Board may dismiss a complaint when it "is of the opinion that any complaint does not state facts which warrant an investigation...." 49 U.S.C.App. § 1482(a)

(Supp.1989) Had the Board acted on these grounds, it would have a stronger argument that its action was a 'refusal to enforce' not reviewable under § 701(a).

ity's conclusory statement to this effect in its letter to the FAA's local official, Mr. Dempsey, dated July 30, 1987.

As the First Circuit observed in a similar case in which the Civil Aeronautics Board, in a conclusory fashion, dismissed without a hearing an airline's claim of discrimination, *Trailways of New England, Inc. v. C.A.B.*, 412 F.2d 926 (1st Cir.1969), a decision regarding competition "would seem meaningless without some factual determination of the actual competitive" situation, *id.* at 934, because "[s]pecificity is required, or at least analysis directed to the precise issues." *Id.* at 936. The FAA has done the same thing in this case that the CAB did in *Trailways:* failed on the record to analyze the issues presented and to make specific reviewable findings of fact and conclusions. Indeed, there is nothing in the record to rebut Wilson's claim that the FAA has simply deferred to, or has become captured by, local Memphis airport officials.

## V.

Wilson requested a hearing under 14 C.F.R. Subpart 13, promulgated by the FAA under the authority of 49 U.S.C.App. § 1482(a). Although Subpart 13 may apply only to persons subject to an affirmative disciplinary order (the regulations are unclear on this point), we agree with the First Circuit in the *Trailways* case, 412 F.2d at 932, that the enabling statute governing FAA procedure in such cases, the investigative provision, § 1482(a), contemplates a "hearing" if the complainant states "a prima facie case." Here the complaint states, and the limited facts available to us in the record seem to corroborate, that there is only one FBO at the airport and that there is a substantial amount of vacant land which may be available. No facts have been offered as yet to suggest that competition would be ill served by a second FBO, or—putting the issue in the language of the exclusive rights provision, § 1349(a)—that it would be "unreasonably costly, burdensome, or impractical" to allow a second FBO. Thus the abbreviated facts in the record appear to make out "a prima facie case."

It is difficult for us to see how Wilson's claim can be adequately decided by the agency or reviewed by this Court without some kind of administrative hearing at which evidence is received, recorded and analyzed in light of the FBO antimonopoly standards outlined in the exclusive rights provision, § 1349(a). For example, will it be "unreasonably costly, burdensome or impractical" to allow a second FBO to compete at the Memphis airport? Will allowing more than one FBO require the "reduction of space leased" to the single existing FBO? Can it be demonstrated that all suitable vacant land at the airport will be needed in the future for uses having a higher priority than a competing FBO? If so, what specific uses are contemplated, when and where will each such use be located and how much land will such uses require? The answers to these questions can only be accurately determined and reviewed after an evidentiary hearing.

Therefore, under the circumstances of this case, we conclude that the hearing language of the investigative provision of § 1482(a), when read in light of the FBO antimonopoly language of the exclusive rights provision of § 1349(a), requires an evidentiary hearing and findings of fact and conclusions adequate for judicial review under § 1486 of the Federal Aviation Act and § 706 of the APA.

Accordingly, the decision of the FAA in this case is vacated and set aside and the case remanded to the FAA for further proceedings in accordance with this opinion.