J. ANDREW LANGE, INC., Petitioner,

v.

FEDERAL AVIATION
ADMINISTRATION,
Respondent.

Docket No. 99–4040

United States Court of Appeals,
Second Circuit.

Argued:  Jan. 24, 2000

Decided:  March 28, 2000

**390**

Joseph D. Kuchta, Washington, D.C.,(Kuchta & Brinker, Washington, D.C.), for Petitioner J. Andrew Lange, Inc.

David W. Ogden, Acting Assistant Attorney General; (Michael Jay Singer, John S. Koppel, Attorneys), Civil Division, Department of Justice, Washington, D.C., for Respondent Federal Aviation Administration.

Before: CARDAMONE and STRAUB, Circuit Judges, and CARMAN*, Chief Judge, U.S. Court of International Trade.

CARMAN, Chief Judge:

Petitioner, J. Andrew Lange, Inc. (Lange), petitions for review of a final decision of the Federal Aviation Administration (FAA) pursuant to 49 U.S.C. § 46110(a). Petitioner filed a complaint alleging that the City of Syracuse (City) violated its federal obligations regarding exclusive rights as set forth in 49 U.S.C. § 40103(e), 49 U.S.C. § 47152, and its Airport Grant agreements. The complaint also claimed that Lange was entitled to an evidentiary hearing. The FAA rejected Lange's claims. We affirm.

## I. BACKGROUND

Petitioner, a former tenant who leased space at Syracuse Hancock International Airport, filed a formal complaint with the FAA alleging that the City (the owner of the airport) violated its federal obligations under the Federal Aviation Act (the Act). Specifically, Lange alleged that the City violated provisions of the Act and applicable grant agreements by granting an exclusive right to other tenants by negotiating with and granting them lease agreements and refusing to negotiate in good faith with Lange.[1] Petitioner further alleged it was entitled to an evidentiary hearing on this matter pursuant to 14 C.F.R. Part 13.[2] The City denied liability, contending it was willing to discuss a new lease agreement with Lange if certain conditions were met but that Lange refused to meet those conditions, namely to reimburse the City for the taxes, interest, and penalties paid by the City on Lange's behalf.

---

* The Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.

1. J. Andrew Lange, Inc.'s (Lange) initial lease expired on or about March 31, 1989, and on or about March 31, 1994, a five year extension term expired. Lange continued to occupy the leasehold on a month-to-month basis until May 31, 1995.

2. Part 13 governed the complaint at the time petitioner filed his complaint with the Federal

Aviation Administration (FAA) on February 24, 1996. On October 16, 1996, the FAA published new administrative procedures governing complaints about airport compliance with federal obligations. *See Rules of Practice for Federally–Assisted Airport Proceedings*, 61 Fed.Reg. 53,998, 53,998–01 (1996) (codified at 14 C.F.R. Part 16). The new procedures took effect on December 16, 1996. *See id.*

The FAA evaluated Lange's complaint, the answer filed by the City, and the documentary evidence submitted by the parties and decided that the City, by failing to renew Lange's lease, did not grant an exclusive right to the other tenants in violation of federal law. The FAA also found that Lange was not entitled to an evidentiary hearing in this case.

## II. DISCUSSION

### A. Standard of Review

This Court evaluates a decision by the FAA under the standard of review provided under the Federal Aviation Act, 49 U.S.C. § 46110(c), and the Administrative Procedure Act (APA), 5 U.S.C. § 706. Under the Federal Aviation Act, this Court reviews the FAA's findings of fact to determine whether they are "supported by substantial evidence." 49 U.S.C. § 46110(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (internal quotation marks omitted).

■ Under the APA, this Court reviews errors of law de novo. *See* 5 U.S.C. § 706 ("[T]he reviewing court shall decide all relevant questions of law."). Regarding other agency findings, conclusions, and actions, the reviewing court shall hold them unlawful and set them aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). The task of the reviewing court under this standard is to determine whether the agency has considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

### B. Evidentiary Hearing

Petitioner argues on appeal it was entitled to an evidentiary hearing pursuant to 49 U.S.C. § 46101(a), FAA regulations, and the due process clause of the Fifth Amendment.

#### 1. Statutory Claim

■ The FAA "shall investigate [a] complaint if a reasonable ground appears." 49 U.S.C. § 46101(a)(1). The agency "may dismiss a complaint without a hearing when ... the complaint does not state facts that warrant an investigation or action." *Id.* § 46101(a)(3). Thus, the FAA has discretion to dismiss a complaint without a hearing. *See Flight Engineers' Intern. Ass'n v. Civil Aeronautics Board,* 332 F.2d 312, 314 (D.C.Cir.1964); *see also Transamerica Airlines, Inc. v. CAB,* 661 F.2d 244, 250–51 (D.C.Cir.1981). On the other hand, where "the [agency] finds in an investigation under this subsection that a person is violating this [Act]," then "[a]fter notice and an opportunity for a hearing ..., the [agency] shall issue an order to compel compliance." 49 U.S.C. § 46101(a)(4). We read section 46101(a)(3), in context, as permitting the agency to dismiss the complaint without a hearing where the complaint on its face fails to state facts that warrant any investigation or when, after an investigation, no action is warranted. Other circuits have similarly so held. *See Penobscot Air Servs., Ltd. v. FAA,* 164 F.3d 713, 720–21 (1st Cir.1999); *see generally Flight Engineers',* 332 F.2d at 314.

Any ambiguity in section 46101 is resolved by the FAA regulations which apply the procedural structure of this section to complaints filed with the agency alleging violations of the Act by airports. The FAA regulations provide for a hearing if, after investigation, the administrator determines allegations set forth in the complaint are substantiated, a proposed order of compliance is issued, and the airport requests a hearing. *See* 14 C.F.R. §§ 13.5(j), 13.20(c) (1995). This·is consis-

tent with section 46101(a)(4) which requires an opportunity for a hearing only if the agency "finds in an investigation ... that a person is violating this [Act]." 49 U.S.C. § 46101(a)(4). Because the regulations constitute a permissible interpretation of the statute, they are entitled to deference. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ Petitioner contends that the FAA is obligated to hold a formal hearing by virtue of 49 U.S.C. § 46101(a) and the agency's regulations where the complaint states a prima facie case. Without regard to whether a prima facie case has been established here, the Court finds Lange does not offer persuasive support for its interpretation of the statute [3], nor does the Court read the statute or the regulations to require a formal hearing under such circumstances. Rather, notwithstanding statutory and regulatory provisions for hearing procedures, the statute and regulations suggest an opportunity for a hearing is required only if there is a finding of noncompliance. As there was no finding of noncompliance here, the agency appropriately exercised its discretion in not

holding a hearing in this case. *See Penobscot,* 164 F.3d at 720–22.

2. Due Process Claim

■ As a former tenant at the Syracuse Hancock International Airport, and thus an alleged beneficiary of the restrictive covenant in the airport's deed prohibiting grants of exclusive rights, Lange claims a due process right to an evidentiary hearing. Under the due process clause, the FAA cannot deprive a party of constitutionally protected property without appropriate procedural safeguards. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541–42, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Without deciding whether Lange's property interest is sufficient to trigger the due process clause, this Court holds the due process clause would not, in any event, obligate the agency to hold a hearing on Lange's complaint. The due process clause is " 'flexible and calls for such procedural protections as the particular situation demands.' " *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).[4] The Court notes

---

**3.** Lange relies on *Kemmons Wilson, Inc. v. FAA,* 882 F.2d 1041 (6th Cir.1989), *Trailways of New England, Inc. v. CAB,* 412 F.2d 926, 931–32 (1st Cir.1969), and *REA Express, Inc. v. CAB,* 507 F.2d 42, 45–46 (2d Cir.1974), to support its statutory and regulatory interpretation. None of these sources is persuasive. In *Kemmons Wilson,* the court stated 49 U.S.C. § 1482(a), now codified at 49 U.S.C. § 46101(a), contemplates a hearing if the complainant states a prima facie case. *See Kemmons Wilson,* 882 F.2d at 1047. This Court is not bound by the Sixth Circuit's dicta, and we decline to follow it now. To require such a hearing would contradict the plain meaning of the statute that the agency may dispense with a hearing where the facts warrant no further investigation or action. Moreover, the court in *Kemmons Wilson* ordered the agency to hold a hearing in part because the agency's analysis was inadequate. *See id.* Here, unlike in *Kemmons Wilson,* the FAA investigated the complaint and evaluated it on its merits prior to reaching a conclusion.

We also find petitioner's reliance on *Trailways* and *REA* unpersuasive as both cases are distinguishable from the case at bar. *Trailways* and *REA* concern an agency's investigative discretion, not a complainant's right to a hearing, as is relevant here. Further, *Trailways* appears to be limited to claims as to discrimination and preference rather than claims concerning exclusive rights. *See Trailways,* 412 F.2d at 931–32.

**4.** In deciding how much process is due under the due process clause, courts weigh three specific factors: (1) "the private interest [*i.e.,* Lange's] that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including "the fiscal and administrative burdens" posed by alternative procedural requirements. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

petitioner's counsel has made similar arguments before other circuit courts to no avail. *See, e.g., Penobscot,* 164 F.3d at 722–25; *Water Works, Inc. v. FAA,* Nos. 97–70101, 97–70632, 1998 WL 482928, 1998 U.S.App. LEXIS 18841, *4–7 (9th Cir. Aug. 11, 1998); *Juarez v. FAA,* Nos. 97–70112, 97–70722, 1998 WL 482929, 1998 U.S.App. LEXIS 18831, *4–8 (9th Cir. Aug. 11, 1998); *House v. FAA,* Nos. 97–70023, 97–70650, 1998 WL 482926, 1998 U.S.App. LEXIS 18848, *4–7 (9th Cir. Aug. 11, 1998). We conclude, for substantially the same reasons, that the balance of the factors outlined in *Eldridge* weighs in favor of the FAA.[5] This Court, therefore, holds the due process clause does not require an evidentiary hearing in Lange's case.

### C. FAA's Dismissal of Petitioner's Complaint

■ The petitioner claims the FAA erred when it found that the City did not violate the Act by granting "exclusive rights" to other tenants. The "exclusive right" provision of the Act provides that "[a] person does not have an exclusive right to use an air navigation facility on which Government money has been expended." 49 U.S.C. § 40103(e). Because the City has received federal funds for its airport through various federal programs, it is subject to the federal prohibition against the grant of an exclusive right.

■ The term "exclusive right" was "intended to describe a power, privilege, or other right excluding or debarring another or others from enjoying or exercising a like power, privilege, or right." *City of Pompano Beach v. FAA,* 774 F.2d 1529, 1541 (11th Cir.1985) (quoting 40 *Op. Att'y Gen.* 71, 72 (1941)). "The type of exclusive right prohibited by [this provision of the Act] has been described as one of the sort noxious to the anti-trust laws." *Id.* at 1542 (internal quotation marks omitted).

The only issue petitioner raises on appeal concerning the agency's "exclusive right" determination is that the FAA's conclusion that the "failure of the city to grant Lange a lease was not based upon an award of an exclusive right to other tenants, but on the failure of the city and Lange to agree on terms and conditions acceptable to both" is not based on substantial evidence. Specifically, Lange alleges that to support the FAA's decision, the FAA must have found the City entered "good faith negotiations with the Petitioner subsequent to [the City's] 'offer' to negotiate" a lease agreement with petitioner on December 13, 1995.[6] Petitioner contends this factual finding and, thus, the FAA's ultimate conclusion, is not supported by substantial evidence on the record. We disagree.

There is nothing in the FAA's decision which suggests its conclusion that the parties could not agree on the terms and conditions of the lease was limited to activities "subsequent to [the City's] 'offer' to negotiate" on December 13, 1995. Rather, it appears the FAA's conclusion was based on evidence before and after the expiration of petitioner's lease. Specifically, evidence

---

5. The Court notes considerations regarding the first and third *Eldridge* factors are substantially the same here as those identified by the other circuits. Additionally, the second *Eldridge* factor, the risk of erroneous deprivation of the petitioner's interest through the procedures used, appears small. As in *Penobscot,* the historical facts here were essentially undisputed, leaving no credibility issues requiring face-to-face proceedings. Also, the FAA appeared to have examined thoroughly the documentary evidence before it and fully discussed the issues raised by petitioner before the agency. Nor has petitioner identified

any appreciable benefit likely to be gained from the FAA holding a hearing. Thus, the FAA proceeding, absent an evidentiary hearing, does not appear to present a risk of erroneous deprivation of Lange's alleged interest, and it appears no value would be derived from additional procedural safeguards.

6. In response to petitioner's letter dated November 16, 1995, the City of Syracuse (City), in a letter dated December 13, 1995, offered to negotiate the terms for a new lease with petitioner.

shows the parties discussed the possibility of Lange selling a hangar to the City, and the City requested reimbursement for $7,142.15 in taxes, interest, and penalties advanced by the City on Lange's behalf.[7] Petitioner does not dispute any of these meetings or conferences took place, that petitioner owed the City $7,142.15 in taxes, interest, and penalties advanced by the City on Lange's behalf, or that Lange requested and the City refused to purchase the hangar. Considering the record as a whole, this Court finds the FAA's conclusion was based on substantial evidence on the record.

Moreover, the Court finds the FAA's determination that the City did not violate its federal obligations was based on broad principles regarding the nature of the "exclusive right" prohibition. In the analysis and discussion section of its decision, the FAA discusses the following: (1) Lange's complaint was based on the erroneous supposition that because the City entered into leases with other tenants but not with petitioner, the City per se violated the "exclusive rights" provision; (2) Lange did not allege the leases given to others differed materially from that offered it; and (3) Lange did not allege that the new lease terms would have made it impossible for Lange to operate on the airport. Such factors, in addition to the FAA's finding that the parties could not agree on the terms and conditions of the lease, appear to form the basis of the FAA's decision.

These factors constitute a reasonable basis upon which the FAA determined the City did not grant an "exclusive right." Accordingly, this Court finds the FAA's ruling was not arbitrary, capricious, or an abuse of discretion and was otherwise in accordance with law.

## III. CONCLUSION

The judgment of the FAA is affirmed.

7. The following facts were in the record: (1) in early 1994 the parties met in response to petitioner's request for authorization from the City to sell the improvements on the land; (2) Lange failed to pay real property taxes due on the leased premises and as of January 10, 1995, the City had advanced $7,142.15 in taxes, interest, and penalties due on the leased premises; (3) the parties met on January 18, 1995, to discuss the lease negotiation, and the City requested reimbursement for real property taxes paid on Lange's behalf; (4) on April 19, 1995, the parties telephonically discussed the possibility of the City purchasing the Lange hangar or negotiating a new lease; (5) since spring 1995, Lange's attorney requested that the City buy the hangar from Lange for a price between $30,000 to $50,000; (6) in a letter dated December 13, 1995, the City stated its willingness to negotiate terms for a new lease with the petitioner subject to reimbursement for real property taxes paid on Lange's behalf; and (7) the City scheduled a meeting with petitioner in February 1996 and the petitioner refused to discuss the terms of a lease. Absent a showing to the contrary, it is presumed the agency considered all evidence in the record when making its determination. See, e.g., United States v. Chemical Foundation Inc., 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926); National Nutritional Foods Ass'n v. FDA, 491 F.2d 1141, 1146 (2d Cir.1974).