09-4810-ag
*41 North 73 West, Inc. v. U.S. Dep't of Transp. et al*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 2nd day of November, two thousand and ten.

PRESENT:

DEBRA ANN LIVINGSTON,
DENNY CHIN,

*Circuit Judges*,

DAVID G. LARIMER,

*District Judge*.[*]

---

41 NORTH 73 WEST, INC., doing business as
Avitat Westchester and Jet Systems,

*Petitioner*,

v.                                                     No. 09-4810-ag

UNITED STATES DEPARTMENT OF TRANSPORTATION,
RAY LAHOOD, Secretary of Transportation,
FEDERAL AVIATION ADMINISTRATION,
J. RANDOLPH BABBITT, Administrator, Federal Aviation

---

[*] The Honorable David G. Larimer, District Judge of the United States District Court for the Western District of New York, sitting by designation.

1

Administration,

*Respondents*,

COUNTY OF WESTCHESTER, NEW YORK,

*Intervenor.*

_____

BARBARA E. LICHMAN and STEVEN M. TABER, Chevalier, Allen & Lichman, LLP, Costa Mesa, California, *for Petitioner*.

TONY WEST, Assistant Attorney General (Michael J. Singer and Sydney Foster, *on the brief*), Washington, D.C., *for Respondents*.

W. ERIC PILSK, PETER J. KIRSCH, and ARTHUR P. BERG, Kaplan Kirsch & Rockwell LLP, Washington, D.C., *for Intervenor*.

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, and DECREED that the petition for review is DENIED.

Petitioner 41 North 73 West, Inc., d/b/a Avitat Westchester and Jet Systems ("Avitat"), seeks review of a September 21, 2009 final decision and order of respondent the Federal Aviation Administration ("FAA"), which found that intervenor County of Westchester, New York ("County") did not violate its conditions to funding under the FAA's Airport Improvement Program, authorized under the Airport and Airway Improvement Act of 1982 ("AAIA"), 49 U.S.C. § 47101 *et seq*. We assume the parties' familiarity with the underlying facts and procedural history, which we reference only as necessary to explain our decision.

***A. Background***

1. *The AAIA*

The FAA provides monetary grants to "airport sponsors," or public agencies that own and operate airports, through its Airport Improvement Program. Congress has required that grant

2

applications contain certain written assurances that an airport sponsor seeking federal funds will abide by a variety of requirements. 49 U.S.C. § 47107(a). Under the AAIA, the Secretary of Transportation is responsible for ensuring compliance with these assurances, 49 U.S.C. § 47107(g), and is authorized to approve grant applications only if the airport sponsor's assurances are "satisfactory to the Secretary." 49 U.S.C. § 47107(a). Accordingly, the Secretary of Transportation has promulgated and revised a set of standardized grant assurances ("Grant Assurances"), including the three at issue in this case.

Grant Assurance 22, entitled "Economic Nondiscrimination," requires the airport sponsor to make its airport available for public use "without unjust discrimination to all types, kinds and classes of aeronautical activities," and to subject businesses based at the airport "making the same or similar uses" of the airport to the same rates, fees, and other charges.[1] 64 Fed. Reg. 45,008, 45,011 (Aug. 18, 1999); 62 Fed. Reg. 29,761, 29,766 (June 2, 1997). Grant Assurance 23, entitled "Exclusive Rights," requires the airport sponsor to assure that "[i]t will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public." 62 Fed. Reg. at 29,766. Further, the airport sponsor must agree that "it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the

---

[1] Specifically, Grant Assurance 22 requires the airport sponsor to assure that:

    a.    It will make the airport available as an airport for public use on reasonable terms and *without unjust discrimination* to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

    . . . .

    c.    Each fixed-base operator at the airport shall be subject to the same rates, fees, rentals, and charges as are uniformly applicable to all other fixed-base operators making the same or *similar uses* of such airport and using the same or *similar facilities*.

64 Fed. Reg. at 45,011; 62 Fed. Reg. at 29,766 (emphasis added).

3

airport to conduct any aeronautical activities." *Id.* Finally, Grant Assurance 24, entitled "Fee and Rental Structure," requires an airport sponsor to assure that it "will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection."[2]  62 Fed. Reg. at 29,767.

The FAA enforces compliance with these and other Grant Assurances by applying procedures delineated in the Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.  14 C.F.R. § 16.1(a)(1), (5).  14 C.F.R. Part 16 permits a person "directly and substantially affected" by an airport sponsor's alleged noncompliance with a Grant Assurance to file a formal complaint with the FAA. 14 C.F.R. § 16.23(a).  If the pleadings reveal a "reasonable basis for further investigation," the FAA investigates the allegations, after which the Director of the Office of Airport Safety and Standards issues an "initial determination."  14 C.F.R. §§ 16.29(a), 16.31(a). If the Director dismisses a complaint, the petitioner can file an administrative appeal to the Associate Administrator for Airports, who examines the existing record and issues a final decision without a hearing.  14 C.F.R. §§ 16.31(c), 16.33(a)(1).  This final decision is then reviewable by a federal appellate court via petition.  49 U.S.C. § 46110; 14 C.F.R. § 16.247(a).

2. *Factual Background*

Much of this litigation centers around a category of aircraft operations known as "general aviation." General aviation is a generic term that refers to all flights other than commercial airline, cargo,  and military aviation activity.  Within this category are two market segments relevant to this case: "Light General Aviation" ("LGA"), and "Large" or "Heavy General Aviation" ("HGA"). LGA refers to smaller general aviation aircraft and services–typically piston or propeller-driven aircraft and smaller jets whose maximum gross takeoff weight ("MGTOW") is less than 12,500

[2] Grant Assurances 22, 23, and 24 each have statutory counterparts in the AAIA requiring similar written assurances from an airport sponsor.  49 U.S.C. §§ 47107(a)(1), (5) (Grant Assurance 22); 49 U.S.C. §§ 40103(e), 47107(a)(4) (Grant Assurance 23); 49 U.S.C. § 47107(a)(13)(A) (Grant Assurance 24).

pounds. LGA aircraft are used primarily for personal or recreational purposes. HGA, meanwhile, refers to larger general aviation aircraft typically used for corporate purposes, whose MGTOW exceeds 12,500 pounds. LGA piston-driven aircraft are generally fueled with 100 octane fuel (known as "AvGas"), while LGA turbo-prop and jet aircraft, along with most HGA aircraft, require jet fuel.

Westchester County Airport ("Airport"), located in White Plains, New York, is a public-use airport owned by the County. The planning and development of the Airport was financed with funds provided by the FAA under the Airport Improvement Program, for which the County accepted obligations under Grant Assurances 22, 23, and 24. Avitat is the largest "fixed-base operator" ("FBO") at the Airport.[3] Avitat is one of three HGA FBOs that provide services and fuel sales to all general aviation users, but primarily cater to HGA corporate and private jets. Two FBOs, Westair Aviation Services, LLC and Panorama Flight Service, Inc. ("LGA FBOs") mainly service LGA aircraft.

In 1992, after having issued a series of policy statements voicing the need to improve general aviation facilities and to support the LGA community, the County submitted to the FAA an application to impose a Passenger Facility Charge ("PFC") at its Airport.[4] The County's application specified that the funds would be used to develop new areas for FBOs to serve primarily light general aviation aircraft. The FAA approved the plan, and authorized the use of PFC funds for the construction of the LGA facilities.

With funding secured, the County issued a "Request for Proposals for the Operation and Management of a Light General Aviation Fixed Base Operation at Westchester County" ("RFP").

---

[3] Fixed-base operators offer aviation services such as fueling, maintenance, repair and aircraft storage facilities at airports.

[4] PFCs are FAA-authorized fees imposed on paying air passengers that are used to fund certain statutorily eligible projects. 49 U.S.C. § 40117; *see also Village of Bensenville v. FAA*, 376 F.3d 1114, 1116 (D.C. Cir. 2004).

The stated goal of the RFP was to "fulfill the County's commitment to support light general aviation at Westchester County Airport" by providing "Light General Aviation Fixed Base Operation services to the owners and operators of light general aviation aircraft under 12,500 pounds." In 1999, the County executed 30-year leases with the LGA FBOs. Due to concerns that rent calculated at a market rate would "seriously challenge the health of the FBO or the price to the public," the County agreed to a discounted rent rate structure based on a percentage of the gross revenues of the LGA FBOs. The County anticipated a yearly rent of approximately $60,000 from each LGA FBO.

The LGA FBO leases require the LGA FBOs to provide a number of services for the LGA community. In addition, the leases expressly limit the number of aircraft with an MGTOW over 12,500 pounds that can be based at the LGA FBOs. The terms of the leases do not permit the sale of jet fuel, but state that "the parties agree to meet to discuss the possibility of the County granting Tenant the right to sell jet fuel" if the percentage of an LGA FBO's based aircraft under 12,500 pounds that use jet fuel ever exceeds 10%. They also provide that, "[e]xcept for the exclusive right of Tenant to possession and use of the Premises, no exclusive rights at the Airport are granted by this Agreement." By contrast, Avitat's 10-year lease, into which it entered in 2005, permits, but does not *require*, Avitat to provide various general aviation services, including aircraft storage, maintenance, and repair. In particular, the lease permits Avitat to sell fuel and lubricant to any aircraft at any location on the Airport not subject to the leasehold of another entity. Avitat is also allowed to base any aircraft with an MGTOW up to 120,000 pounds at the Airport, while any heavier craft requires the approval of the Airport Manager. Avitat agreed to an annual rent of approximately $700,000, which would increase to approximately $875,000 upon the completion of certain improvements to the leasehold.

In 2001, the LGA FBOs reached the lease's trigger for jet fuel sale discussions, and approached the County with a request for permission to sell jet fuel. The County permitted the LGA FBOs to sell jet fuel for aircraft weighing no more than 50,000 pounds. According to the County, the authorization to sell jet fuel was "essential for the [LGA FBOs'] economic survival and for

6

ensuring access to the Airport by operators of [LGA] aircraft." While the LGA FBOs repeatedly requested that the County further ease restrictions on their ability to sell jet fuel, those requests were expressly denied. In addition, when one LGA FBO requested the removal of the required LGA services from its lease, the County replied that it would "absolutely not agree to this request."

***B. Discussion***

In its administrative proceedings before the FAA, Avitat protested the County's grant of permission to sell jet fuel when it had already used PFC funds to finance the LGA facilities and given the LGA FBOs a favorable rent rate. According to Avitat, this permitted the LGA FBOs to thrive at the expense of Avitat by undercutting Avitat's price for fueling and servicing jet aircraft. Avitat thus claimed that the County violated Grant Assurances 22, 23, and 24. The FAA disagreed, concluding that the differing treatment of Avitat and the LGA FBOs was permissible under Grant Assurance 22 because they were not "similarly situated." On this ground, it also found that the differing treatment did not result in the grant of an exclusive right in violation of Grant Assurance 23. The FAA then found that the County did not violate Grant Assurance 24, as Avitat's rent was based on reasonable rental rates and was not higher than would be the case because of the LGA FBOs' rent rate structure.

On appeal, Avitat argues that the FAA: 1) applied an incorrect standard of review; 2) erroneously applied a "similarly situated" test to find that the County did not engage in unjust discrimination; 3) lacked substantial evidence to find that the County had not granted an exclusive right to LGA FBOs; and 4) erred in finding that the County maintained a proper fee structure under Grant Assurance 24. We review the FAA's findings of fact to determine whether they are supported by "substantial evidence." 5 U.S.C. § 706; *accord* 49 U.S.C. § 46110(c) (describing the court's authority to review FAA orders); *see also J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). Our review for errors of law, meanwhile, is *de novo*. *Id.* (citing 5 U.S.C. § 706). The

7

courts must give "some deference" to the agency's "informed judgment" if the statute is silent or ambiguous on an issue. *Penobscot Air Servs., Ltd. v. FAA*, 164 F.3d 713, 719 (1st Cir. 1999) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984)). But even where such deference is appropriate, the agency's reasoning must not be "inadequate, irrational or arbitrary." *Id.* Finally, the agency's "non-factual" findings, namely "other agency findings, conclusions, and actions," must be set aside by the reviewing court if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Lange*, 208 F.3d at 391. Our task is to determine whether the agency has "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action." *Id.*

1. *The FAA's Standard of Review*

The Acting Associate Administrator reviewed the Director's determination here for "whether (a) the findings of fact . . . are supported by a preponderance of reliable, probative, and substantial evidence, and (b) each conclusion of law is made in accordance with applicable law, precedent, and public policy." We review an agency's decision to apply a particular standard of review to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Vineland Fireworks Co., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 544 F.3d 509, 514 (3d Cir. 2008). The parties agree that 14 C.F.R. Part 16 does not provide the agency with a standard for reviewing the Director's initial determination. Avitat thus argues that the FAA should have reviewed the initial determination *de novo* under § 557(b) of the Administrative Procedure Act ("APA").[5] 5 U.S.C. § 557(b). We disagree.

While we have held that an agency's review of an initial determination under § 557(b) is *de novo*, *see Mr. Sprout, Inc. v. United States*, 8 F.3d 118, 123 (2d Cir. 1993), §557(b) does not apply in this case. Section 557 applies only to "an adjudication required by statute to be determined on

_____

[5] APA § 557(b) reads, "[o]n appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule." 5 U.S.C. § 557(b).

8

the record after opportunity for an agency *hearing*." 5 U.S.C. §§ 554(a), 556 (emphasis added); *see* 1 Richard J. Pierce, Jr., *Administrative Law Treatise* § 8.2 (4th ed. 2002). We have held that no hearing is required under 49 U.S.C. § 46101(a), which empowers the FAA to investigate complaints "if a reasonable ground appears." *Lange*, 208 F.3d at 391; *see Penobscot*, 164 F.3d at 720-21. Similarly, we have found no hearing requirement in 14 C.F.R. Part 16. Here, the regulations would only have granted *the County* an opportunity for a formal hearing, and "only if there [had been] a finding of noncompliance" by the agency. *Lange*, 208 F.3d at 392; *see* 14 C.F.R. § 16.31(d). Because Avitat was not entitled to an opportunity for a formal hearing under Part 16 procedures or a relevant statute, § 557(b)'s standard does not apply. Avitat's argument therefore fails.

2. *Grant Assurance 22: Unjust Discrimination*

Avitat next argues that it was not required to be "similarly situated" with the LGA FBOs to prevail on its unjust economic discrimination claim under Grant Assurance 22. Avitat highlights the fact that the "similarly situated" language is only found in 22(c), and contends that its unjust discrimination claim was solely under Grant Assurance 22(a), since its unjust discrimination claim has nothing to do with "rates, fees, rental, and other charges." Avitat points to no case law suggesting that this makes a difference. Indeed, other courts have declined to make such a rigid distinction between the two provisions. *See, e.g.*, *R/T 182, LLC v. FAA*, 519 F.3d 307, 309 (6th Cir. 2008) ("The term 'unjust discrimination' is not statutorily defined, but the agency has interpreted it to require a showing that a party similarly situated to the complainant was treated preferentially."); *Pompano Beach*, 774 F.2d at 1543 (pointing to differences in non-monetary lease terms to find unjust discrimination). The "similarly situated" definition "focuses our attention on those distinctions that are legitimate bases for discrimination, and those that are not." *R/T 182*, 519 F.3d at 309. Merely stating that a decision "lacks fairness," meanwhile, "merely restates [an] assertion that it is unjust without getting us any closer to a reasoned resolution." *Id.* Avitat thus fails to demonstrate that the FAA committed a legal error.

Avitat argues in the alternative that it was similarly situated with the LGA FBOs, since it was

9

permitted to offer all of the services that the LGA FBOs offer. The only meaningful difference, according to Avitat, was Avitat's ability to sell jet fuel. The FAA properly found otherwise. Avitat's lease provides that it may base and accommodate any aircraft with a MGTOW up to 120,000 pounds, and permits (but does not *require*) it to offer a variety of FBO services. Avitat may also sell jet fuel to any aircraft at the airport and does not provide certain LGA services because it does not base smaller aircraft at its facilities. The LGA FBOs, meanwhile, are required to provide AvGas and a variety of services to the LGA community, can only base up to twelve aircraft with a MGTOW between 12,500 to 50,000 pounds, and cannot accommodate any aircraft with a MGTOW greater than 50,000 pounds. Avitat also does not dispute or contradict the County's declarations that the LGA market is a distinct market that is less profitable than services for larger aircraft. The FAA therefore did not abuse its discretion in concluding that Avitat and the LGA FBOs were not similarly situated.

3. *Grant Assurances 23 and 24*

Avitat claims that the County granted an exclusive right to LGA FBOs when it gave them "subsidies" while allowing them to compete with Avitat in the sale of jet fuel. Avitat argues that the FAA erroneously required a similar situation between the parties, and consequently a violation of Grant Assurance 22, to find a violation of Grant Assurance 23.

Avitat is mistaken. As the FAA's Associate Administrator noted, Avitat's claim that the County granted the LGA FBOs an exclusive right was based on its own allegation that the County unjustly discriminated against it. An "exclusive right" is a "power, privilege, or other right excluding or debarring another or others from enjoying or exercising a like power, privilege, or right." *Lange*, 208 F.3d at 393; *Pompano Beach*, 774 F.2d at 1541. Such a right is constructively granted when "the imposition of unreasonable standards or requirements" has the practical effect of imposing a significant burden on an entity's ability to engage in a particular aeronautical activity. *Pompano Beach*, 774 F.2d at 1544.

While acknowledging that unjust discrimination can result in the constructive grant of an

exclusive right, the Associate Administrator of the FAA found no such discrimination where two parties were not similarly situated. Thus, there was no exclusive right granted to the LGA FBOs because "[i]t is . . . denying others a *similar* right that creates a violation of Grant Assurance 23." *41 North 73 West, Inc. v. County of Westchester, New York*, FAA Docket No. 16-07-13, 2009 FAA LEXIS 435 at *101 (Sept. 18, 2009) (final decision and order) (emphasis added). To the extent Avitat suggests that the LGA FBOs' ability to sell jet fuel without paying market rent constituted an exclusive "subsidy," the FAA found no evidence that Avitat was subsidizing the LGA FBOs, or that the LGA FBOs were Avitat's real competitors. We find no reason to disturb the FAA's findings.

Avitat's claim under Grant Assurance 24 is also unavailing. Grant Assurance 24 requires that the County "maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport." 62 Fed. Reg. at 29,767. Avitat fails to point to any credible evidence suggesting that the Airport was not self-sustaining. It also "provides no evidence that the rental and fees it pays are higher than would be the case because of what the LGA FBOs pay." *41 North 73 West, Inc.*, 2009 FAA LEXIS 435 at *105. The FAA thus properly concluded that the County did not violate Grant Assurance 24.

**C. Conclusion**

We have considered Avitat's remaining arguments and find them to be waived or without merit. The petition for review is therefore DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
